UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

TAE H. KIM, YOUNG M. CHOI, DONG M.
JU, HONG S. KIM, YOON C. KIM, CHUL G.
PARK, JIN H. PARK, EUTEMIO MORALES,
ZHE Y. SHEN, JONG H. SONG, and
R. JULIAN VENTURA,

                  Plaintiffs,

      -against-

JI SUNG YOO a/k/a JISUNG YOO a/k/a
JI S. YOO a/k/a JAY YOO, SANDRA YOO
a/k/a SANDRA YEAR KUM YOO a/k/a
YEAR KUM YOO, SAMUEL D. YOO, and
CAROLYN YOO,

                  Defendants.
------------------------------------------X

15 Civ. 3110

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 9/29/17

A P P E A R A N C E S:

      Attorneys for Plaintiffs

      ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
      99 Hudson Street
      New York, NY 10013
      By: Kenneth Kimerling, Esq.

      LATINO JUSTICE/PRLDEF
      99 Hudson Street
      New York, NY 10013

      SHEARMAN & STEARLING
      599 Lexington Avenue
      New York, NY 10002
      By: Adam Goldstein, Esq.

      Attorneys for Defendants

      LARSEN ADVOCATES P.C.
      104 1ST Place
      Brooklyn, NY 11231
      By: Kristian Karl Larsen

**Sweet, D.J.**

Defendants Ji Sung Yoo ("J. Yoo"), Sandra Yoo ("S. Yoo"), Samuel Yoo ("Samuel") and Carolyn Yoo ("Carolyn") (collectively, the "Yoos" or the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment to dismiss the complaint of Plaintiffs Tae H. Kim ("T. Kim"), Young M. Choi ("Choi"), Dong M. Ju ("Ju"), Hong S. Kim ("Hong"), Yoon C. Kim ("Y. Kim"), Chul G. Park ("C. Park"), Jin H. Park ("J. Park"), Eutemio Morales ("Morales"), Zhe Y. Shen ("Shen"), Jong H. Song ("Song") and R. Julian Ventura ("Ventura") (collectively, the "Plaintiffs"), which alleges fraudulent conveyances by J. Yoo. Defendants have, in the alternative, also sought a declaratory judgment and have moved *in limine* to exclude evidence related to June Yoo Corp., Gum Gang Inc., and other evidence related to the finances of non-parties under Federal Rules of Evidence 402 and 403.

Based on the facts and conclusions set forth below, Defendants' motions are denied.

1

**Prior Proceedings**

This action was filed on April 21, 2015. (Dkt. No. 1.)
Discovery has proceeded.

On September 15, 2015, Defendants moved to dismiss
Plaintiffs' Complaint, (Dkt. Nos. 28, 35), which was denied on
January 19, 2016, (Dkt. No. 57).

On June 20, 2017, Defendants moved for summary judgment.
(Dkt. No. 85.) The instant motion was heard and marked fully
submitted on September 6, 2017.

**Facts**

Plaintiffs are employees of restaurants owned and operated
by J. Yoo. Plaintiffs are also judgment creditors to J. Yoo as a
result of a $2.6 million judgment (the "Judgment") rendered
against J. Yoo, his restaurants, Kum Gang, Inc. ("Kum Gang"),
and Kum Kang, Inc. ("Kum Kang," and, together with Kum Gang, the
"Restaurants"), and others in a 2015 Fair Labor Standards Act
("FLSA") action in Kim v. Kum Gang Inc., 12 Civ. 5244 (S.D.N.Y.)
(the "Restaurant Case"). Additional background on this case can

be found in the Honorable Michael H. Dolinger's Restaurant Case opinion, see Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *2-*22 (S.D.N.Y. Mar. 19, 2015), and in the previous opinion of this Court, see Kim v. Yoo, No. 15 Civ. 3110 (RWS), 2016 WL 258642, at *2 (S.D.N.Y. Jan. 20, 2016).

The following is a brief recitation of the facts, drawn from Defendants' Rule 56.1 Statement ("Defs.' 56.1"), Plaintiffs' Responses to Defendants' Rule 56.1 Statement (Pls.' 56.1 Reply"), Plaintiffs' Statement of Additional Material Facts ("Pls.' 56.1"), and the incorporated exhibits referenced therein, as necessary to resolve the instant motion. Other than to materiality and as otherwise noted below, the following facts are not in dispute.

On January 28, 2010, the New York State Department of Labor ("DOL") began an investigation into J. Yoo and the Restaurants. Between 2010 and 2011, during the investigation, J. Yoo transferred interests in three pieces of real property (the "Properties") to his wife, S. Yoo, and their two adult children, Samuel and Carolyn. These conveyances form the bases of present action's claims. The three pieces of real property were: a Fifth Avenue condominium in Manhattan (the "Condominium" or the

3

"Condo"); a home in Little Neck, Queens (the "Home"); and a commercial property located in Sheepshead Bay, Brooklyn (the "Brooklyn Property").

On March 10, 2010 J. Yoo and Carolyn transferred their equal interests in the Condominium to themselves and S. Yoo in equal parts, by deed, for no consideration. As of February 2, 2010, the Condo was appraised at $1,275,000

J. Yoo and S. Yoo owned the Home as husband and wife in a tenancy by the entirety. On or about November 15, 2011, J. Yoo transferred his interest to S. Yoo and Samuel. On or about February 2, 2012, S. Yoo and Samuel transferred their equal interests to themselves and Carolyn equally. As of December 21, 2011, the appraised value of the Home was $770,000. On or about May 1, 2012, the the Home was mortgaged for $500,000. Plaintiffs note that this deed transfer reflected no consideration. J. Yoo continues to reside in the Home.

On or about November 16, 2011, J. Yoo transferred the Brooklyn Property, for which he was a full owner, to S. Yoo and Samuel. On or about January 18, 2013, Brooklyn Property was mortgaged for $450,000. Plaintiffs note that this deed transfer

4

also reflected no consideration paid. As of July 27, 2012, the assessed value of the Brooklyn Property was $1,100,000.

On or about February 2011, the DOL assessed a penalty against J. Yoo and the Restaurants for a total of $1,176,208.30, which at some point later was lowered to $942,126.89, and then lowered again to $727,318.91. The parties agree that at that time of the fine, only $581,855.02 of the fine was based on unpaid wages. The calculations also included a 200% civil penalty for previous violations of New York Labor Law.[1] The parties dispute whether the DOL lowered the fine amount further.

On April 22, 2011, because the Restaurants failed to pay the DOL penalty within ten days, the DOL assessed an additional civil penalty, raising the total DOL penalty to $1,950,992.84.

Plaintiffs point to several pieces of evidence to contend the conveyance of the Properties was motivated by the DOL investigation. Plaintiffs note that J. Yoo created false time records presented them to the DOL following the start of the DOL investigation. Plaintiffs also point to testimony from S. Yoo indicating that she was aware of the Restaurants' growing debts

---

[1]    J. Yoo and his Restaurants was previously investigated and fined by the DOL for New York Labor Law violations in 2007.

and that if the names on the deeds did not change, the
Properties might be lost. Plaintiffs also state that monies
given by S. Yoo to the Restaurants were written up as loans and
that, over that same period, S. Yoo's Gum Gang, Inc. ("Gum
Gang"), a separate restaurant owned solely by S. Yoo, received
more money from the Restaurants than Gum Gang provided to them.[2]
According to Plaintiff, by the end of December 2009, J. Yoo owed
Plaintiffs $1,674,976.60 in accrued unpaid wages and, as of the
week of October 31, 2011, J. Yoo owed Plaintiffs $1,991,140.53.

Plaintiff adduces additional evidence that the conveyances
were not to support J. Yoo's Restaurants. First, mortgage
proceeds amounted to $950,000, but little the money was paid to
J. Yoo or the Restaurants. The $500,000 Home mortgage was split
between Carolyn, who received $41,364.68, and S. Yoo, who
received $440,093.31. S. Yoo's $440,093.31 was deposited into a
Nara Bank Account on May 24, 2012, and was never conveyed to J.
Yoo or the Restaurants; rather, much of the Nara Bank Account

---

[2]     Plaintiff present checks and additional documents that
indicate the following. From 2012 to 2015, S. Yoo wrote checks
for the Restaurants totaling $692,664.48. From 2013 to 2015, the
Restaurants wrote checks to S. Yoo totaling $225,144.59. Over
2013 and 2014, Kum Gang wrote checks to Gum Gang totaling
$875.615.00, of which Gum Gang repaid $90,500.00. Plaintiffs
note that the Kum Gang checks to Gum Gang were off-set on the
Kum Gang books against monies labeled as "Loan from S. Yoo."

funds went to Gum Gang. The Brooklyn Property $450,000 mortgage proceeds were deposited in S. Yoo's Flushing Bank account, which issued a check to Kum Gang, Inc. for $210,000. Plaintiffs also note that J. Yoo's Gift Tax for 2011 listed the Home and Brooklyn Properties as gifts to Samuel, specifically, reporting the gifts to Samuel as $390,000 for the Home and $390,000 for the Brooklyn Property.

Defendants present additional evidence to indicate that that the conveyances were not fraudulent. Defendants state that the mortgage proceeds from the Home and the Brooklyn Property were used to assist in the Restaurants' cash flow problems, payments which were overseen by S. Yoo, contentions principally supported by testimonial evidence. Moreover, Defendants contend that S. Yoo was in charge of authorizing other managers to make electronic payments based solely on whether the Restaurant's account showed sufficient funds, which she performed mostly from Home, and that she was not aware or told about the Restaurant's labor issues by J. Yoo. In addition, the conveyance of the Condo was to take advantage of S. Yoo's good credit rating and refinance the existing mortgage, as J. Yoo's poor credit was preventing approval of a bank application.

The parties dispute other reasons that could support finding consideration for the conveyances. Defendants state that when J. Yoo and S. Yoo first immigrated to the United States, S. Yoo's family gave over $1 million for J. Yoo to invest for the Yoo's children's future; however, according to Defendants' affidavits and testimony, that money was ultimately spent on the Restaurants, which continued to need additional infusions of cash. According to Defendants, the transfers and general control over the mortgage payments from the conveyances to S. Yoo were in repayment to the earlier payments by S. Yoo's family. Plaintiffs dispute that S. Yoo's family provided funds to start J. Yoo's businesses but concur that the Restaurants were not financially stable.

The parties generally dispute the solvency of the Restaurants at and following the time of the DOL investigation. 2010 tax returns list Kum Gang with an income of $101,722, Kum Kang with a loss of $208,098, and J. Yoo with compensation of approximately $50,000. 2011 tax returns list the Restaurants' combined assets at around $1.8 million accompanied by a similar value of liabilities, Kum Kung with no stated income in 2011, Kum Gang with an income of $22,616, and J. Yoo with compensation of $19,997. 2012 tax returns show Kum Kang with an income loss

of $186,538, Kum Gang with an income loss of $25,929, and J. Yoo
with compensation of $25,122.

**Applicable Standards**

Summary judgment is appropriate only where "there is no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The
relevant inquiry on application for summary judgment is "whether
the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one
party must prevail as a matter of law." Id. at 251-52. A court
is not charged with weighing the evidence and determining its
truth, but with determining whether there is a genuine issue for
trial. Westinghouse Elec. Corp. v. N.Y.C. Transit Auth., 735 F.
Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at
249). "[T]he mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that

9

there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

Federal Rule of Evidence 402 provides that "evidence that is not relevant is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

## Defendants' Motion for Summary Judgment is Denied

Defendants have moved for summary judgment against Plaintiffs' claims for constructive and intentional fraudulent conveyance under New York Debtor and Creditor Law ("NY DCL") Sections 273, 275, and 276, contending that as a matter of law the transfers of the Properties were legitimate, owned by Yoo family members other than J. Yoo, the Judgment debtor, and therefore outside the reach of Plaintiffs, the Judgment

cretors.[3] As material issues of fact exist as to each of the conveyances and as to each of Plaintiffs' claims, Defendants' motion is denied.

---

[3] Tacked onto Defendants' summary judgment motion is a request for a declaratory judgment and order "declaring and clarifying that Plaintiffs fail to state a cause of action for individual money judgments against Defendants Sandra Yoo, Samuel Yoo and Carolyn Yoo or any non-parties." (Dkt. No. 85.) The Court was clear in its earlier opinion: Plaintiffs' do not seek to S. Yoo, Samuel, or Carolyn "personally liable for the FLSA violations at Yoo's restaurant" but only "to reverse the allegedly fraudulent conveyances of Yoo's property to them;" put another way, the "conveyance action is not an attempt to recover assets from Sandra, Samuel, and Carolyn Yoo to satisfy the underlying judgment (to which they are, of course, not subject); it is an attempt to recover [J. Yoo's] assets to satisfy the judgment against him, even though those assets have allegedly been hidden away under the care of others." Kim, 2016 WL 258642, at *4 (citation omitted). Whether the conveyances were or were not fraudulent remains to be determined by a finder of fact. Should a finder of fact ultimately conclude fraud transpired, however, New York law permits that if a "transferee has disposed of the property or has damaged it, the [creditor] should have personal judgment against the transferee for the value . . . where the grantee has disposed of the wrongfully conveyed property or depreciated it." United States v. Bushlow, 832 F. Supp. 574, 583 (E.D.N.Y. 1993) (internal citations omitted); see also Citibank, N.A. v. Benedict, No. 97 Civ. 9541 (AGS), 2000 WL 322785, at *15 (S.D.N.Y. Mar. 28, 2000) (holding that "transferee has disposed of the property or has damaged it, the [creditor] should have personal judgment against the transferee for value" and collecting cases). Such relief is not imposing the underlying Judgment itself onto anyone other than J. Yoo. To the extent that Defendants seek a declaratory judgment further on the matter, it is denied.

11

Section 273 provides that: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." NY DCL § 273. The Second Circuit has instructed that a conveyance is "deemed constructively fraudulent" under Section 273 only if "two separate elements are satisfied: first, it is made without 'fair consideration,' and second, the transferor is insolvent or will be rendered insolvent by the transfer in question." United States v. Watts, 786 F.3d 152, 164 (2d Cir. 2015) (internal quotation marks omitted) (quoting In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005)).[4] Section 275 is related and provides that, "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is

---

[4]    Courts will sometimes also state a third requirement for Section 273 and 275 claims, that there be proof of a transfer. See, e.g., In re Khan, No. 10 Civ. 46901 (ESS), 2014 WL 10474969, at *12 (E.D.N.Y. Dec. 24, 2014). However, as the parties do not dispute that the transfers of the Properties constitute conveyances under the NY DCL, that element is already met here. See NY DCL § 270.

fraudulent as to both present and future creditors." NY DCL
§ 275.

Defendants contend that there is no genuine dispute of fact
that fair consideration was provided between J. Yoo and the
members of his family for each conveyance or that, at the time
of each conveyance, J. Yoo was not, would not, and did not
believe he would be rendered insolvent by the transfers. Each
will be addressed in turn.

"'Fair consideration' is defined in DCL § 272(a) as
existing '[w]hen in exchange for such property, or obligation,
as a fair equivalent therefor, and in good faith, property is
conveyed or an antecedent debt is satisfied.'" Integrity Elecs.,
Inc. v. Garden State Distribs., Inc., No. 14 Civ. 3197 (BMC),
2016 WL 3637004, at *8 (E.D.N.Y. June 30, 2016) (quoting DCL
§ 272(a))). "The fair consideration test 'is profitably analyzed
as follows: (1) . . . the recipient of the debtor's property[ ]
must either (a) convey property in exchange or (b) discharge an
antecedent debt in exchange; and (2) such exchange must be a
'fair equivalent' of the property received; and (3) such
exchange must be 'in good faith.'" In re Sharp Int'l Corp., 403
F.3d at 53-54 (quoting HBE Leasing Corp. v. Frank, 61 F.3d 1054,

13

1058-59 (2d Cir. 1995)). Under Section 273, the question of good faith is applied to the transferee, not transferor. See HBE Leasing Corp., 61 F.3d at 1059 n.5. As here, "when an intra-family transaction is at issue . . . New York law places a heavy burden on the transferee to show that there has been fair consideration for the transfer." United States v. Scharfman, No. 79 Civ. 4224 (JMC), 1981 WL 1855, at *6 (S.D.N.Y. Aug. 14, 1981); see also MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 937 (S.D.N.Y. 1995) (holding that when "information concerning the value of indirect benefits received . . . is within the control of the defendants" it is "appropriate to shift to [defendants] the burden of coming forward with supporting evidence").

The thrust of Defendants' argument is that agreements made by the Yoos to use mortgages on some of the properties—presumably the Home and the Brooklyn Property—to get loans and make payments in support of the Restaurants constitutes fair consideration. (See Defs.' Mem. in Supp. ("Defs.' Mem.") at 15-16.) As a matter of law, payments made to third parties, like J. Yoo's Restaurants, can constitute fair consideration; however, such evidence needs to be "'fairly concrete' to constitute 'reasonably equivalent value.'" In re Gonzalez, 342 B.R. 165,

14

173 n.7 (Bankr. S.D.N.Y. 2006) (citation omitted); see also In
re Nirvana Rest. Inc., 337 B.R. 495, 502 (Bankr. S.D.N.Y. 2006)
(quoting Rubin v. Mfrs. Hanover Trust Co., 661 F.2d 979, 991-92
(2d Cir. 1981)) ("A debtor can receive 'fair consideration'
indirectly through a benefit conferred on a third party provided
that 'the value of the benefit received by the debtor
approximates the value of the property or obligation he has
given up.'"). The payments must to occur, however; "promises of
future support do not constitute fair consideration." Scharfman,
1981 WL 1855, at *6 (S.D.N.Y. Aug. 14, 1981) (collecting cases);
see also Gavenda v. Orleans Cnty., No. 95 Civ. 251E (SC), 2002
WL 31974390, at *2 (W.D.N.Y. Dec. 12, 2002) (collecting cases).

With the evidence before the Court today, Defendants have
not established that fair consideration is beyond genuine
dispute to permit summary judgment. None of the conveyance
papers for the Properties indicate that any consideration was
paid to J. Yoo for the transfers. Evidence regarding S. Yoo's
knowledge of the financial situation of the Restaurants and the
impact the DOL investigation on the Yoos' property raises
questions about the Yoos' good faith in the conveyances. Other
than submitted affidavits sworn by J. Yoo and S. Yoo, no other
evidence presented undisputedly establishes that refinancing of

15

the Properties provided the Yoos money that would, and in fact did, go to support the Restaurants; to the extent that Defendants' have demonstrated that S. Yoo and Gum Gang provided money over the years to the Restaurants, Plaintiffs' evidence of repayments and bookkeeping labeling raises a triable issue as to whether those payments were loans or consideration for the conveyances.

A question of fact also exists as to J. Yoo's insolvency at the time of the conveyances. The NY DCL provides that a person is insolvent "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NY DCL § 271(1). "Assets" is defined as property that is "not exempt from liability for [ ] debts." NY DCL § 270. "To determine insolvency, courts apply a 'balance sheet' test—i.e., whether the debtor's debt exceeds his salable assets." In re Chin, 492 B.R. 117, 127 (Bankr. E.D.N.Y. 2013) (citing O'Toole v. Karnani (In re Trinsum Group, Inc.), 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011)). "[T]he operative reference point for determining insolvency is the time at which the transfer took place and insolvency of the transferor . . . cannot be presumed from subsequent insolvency at a later point in time."

Id. (internal quotation marks and citations omitted). "Only assets with a present salable value are taken into consideration in determining insolvency. Claims that are inchoate, uncertain, and contested have no present value and cannot be considered an asset of the [transferor]." McCarthy v. Estate of McCarthy, 145 F. Supp. 3d 278, 286 (S.D.N.Y. 2015) (alternation in original) (quoting First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 871 F. Supp. 2d 103, 120 (E.D.N.Y. 2012)). Where, as here, there is an absence of established fair consideration, the burden "shifts to the transferee to prove continued solvency after the transaction." Capital Distributions Servs., Ltd. v. Ducor Exp. Airlines, Inc., 440 F. Supp. 2d 195, 203 (E.D.N.Y. 2006) (citing RTC Mortgage Trust 1995-S/N1 v. Sopher, 171 F. Supp. 2d 192, 199 (S.D.N.Y. 2001)); see also United States v. Mazzeo, 245 B.R. 435, 440 (E.D.N.Y. 1999) ("Courts view intrafamily transfers made without any signs of tangible consideration as presumptively fraudulent.")

Defendants contend that at the time of each conveyance, J. Yoo both possessed and believed he possessed the requisite assets to render him solvent, particularly given that his past experience with the DOL would have led him to believe that any final penalty would result in an almost two million dollar fine.

17

(See Defs.' Mem. at 18-20, 22-24.) Plaintiffs contend that, as wage damages that J. Yoo had accrued, unpaid wage damages about which he knew, amounted to debt that exceeded his assets by the time of the conveyances.[5] (See Pls.' Mem. in Opp. ("Pls.' Opp.") at 15.)

Based on the evidence presented, it is a triable question of fact whether J. Yoo's assets exceeded his "probable liability" at the time of the conveyances. Plaintiffs have put forward evidence to support the position that by January 2010, J. Yoo had probable liability for over $1.6 million in accrued back pay damages as explained in Plaintiffs' FLSA action and over $1.5 million in total DOL fines and penalties stemming from

---

[5]     In support, Plaintiffs cite to two provisions. First, Plaintiffs note DCL Section 270, which provides that a "creditor" is "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." NY DCL § 270. Second, Plaintiffs highlight New York Labor Law Section 191(1)(a), which provides that: "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned . . . ." N.Y. Lab. Law § 191(1)(a). "A claim for unpaid wages accrues on the date on which the employee should have been paid for services rendered but was not." Lanzetta v. Florio's Enterprises, Inc., 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011). Accordingly, unpaid wage damages owed by J. Yoo at the time of each conveyance are considerable in assessing the debt side of his "balance sheet."

18

other back pay damages.[6] (See Pls.' Mem. at 5 & n.6.) At the time

of the transfer of the Condo, J. Yoo owned a half interest in

the Condo, had a tenancy by the entirety interest in the Home,

and full interest in the Brooklyn Property; based on the

evidence adduced assessing the value of the Properties generally

around the time of the conveyances, totaled approximately

$637,500, $385,000, and $1.1 million, respectively.[7] Even

---

[6]    The accrued back pay, interest, liquidated damages, and
additional civil penalty were probable given J. Yoo's knowledge
of the unpaid wages and previous DOL interactions; such damages
are not "entirely speculative" as not to count as existing debt.
Shelly v. Doe, 249 A.D.2d 756, 757, 671 N.Y.S.2d 803, 806
(1998). The April 2011 fine from failing to pay the DOL penalty
within the proscribed number of days, however, is too
"hypothetical" to be considered part of J. Yoo's accrued debt.
Lippe v. Bairnco Corp., 99 F. App'x 274, 282 (2d Cir. 2004).
Moreover, while Defendants reference prior experience with the
DOL and the DOL's inclination to lower fines levied, no evidence
has been adduced either in support of that claim or in support
of its applicability to the DOL investigations occurring at the
time of the conveyances.

[7]    The parties dispute how to calculate the salable value of
J. Yoo's interest in the Home, and neither party cited authority
to support a proposed valuation. When parties own a property in
the tenancy by the entirety, the "separate interest of one
spouse is subject to rights of the co-owner . . . [therefore] we
must value the debtor's interest at something less that the
interest of a single owner in fee simple absolute." In re
Bradigan, 501 B.R. 151, 154 (Bankr. W.D.N.Y. 2013). Accordingly,
J. Yoo's salable asset in the Home is calculated at 50% of the
Home's assessed value for present purposes.

        As to the precise valuation of the Properties at the time
of each conveyance, the parties have submitted many different
documents that put the exact worth of the Properties at
different values. Such lack of clarity further militates away

19

combining these with J. Yoo's stated income at the time and
assets tied up in the Restaurants—Restaurants which, together,
were generating a net loss of revenue and had about as much
liability as assets and for which Defendants have not submitted
evidence to establish their salable value—does not equal the
amount of probable liability J. Yoo possessed at the time of the
conveyance of the Condo. As to the subsequent conveyances of the
Home and the Brooklyn Property, at which point J. Yoo's assets,
with less ownership in property, were lesser and his accrued
debts, with additional unpaid wages accrued, even greater,
Defendants have not rebutted the presumption of insolvency to
merit summary judgment.[8]

Lastly, Plaintiffs have put forward sufficient evidence to
raise a triable issue as to whether J. Yoo had an "awareness . .
. that, as result of the conveyance, he [would] not be able to

---

from summary judgment. Nevertheless, for the sake of determining
the present motion, the Properties' appraisals are used because
they appear to be the documents relied on by both parties in
their motion papers and, therefore, least disputed. (See Pls.'
56.1 ¶¶ 14-16; Defs.'Reply in Further Supp. ("Defs.' Reply") at
6 n.1.)

[8]     Defendants contend that the value of the Restaurants were
"valuable and increasing in value" during the relevant time
period. (See Defs.' Mem. at 23-24.) No evidence was cited, and
no documentary evidence appears to have been submitted, in
support.

pay present and future debts." <u>Ostashko v. Ostashko</u>, No. 00 Civ. 7162 (ARR), 2002 WL 32068357, at *26 (E.D.N.Y. Dec. 12, 2002), aff'd sub nom. Ostashko v. Zuritta-Teks, Ltd., 79 F. App'x 492 (2d Cir. 2003) (citation omitted) (analyzing NY DCL § 275 claim). Plaintiffs have put forward deposition transcripts which indicate the J. Yoo was aware of the potential magnitude of his fines, supported by the fact that J. Yoo created false time records in the face of the 2010 DOL investigation, and the consequence it might have with regard to his real property assets, as exhibited by the rapidity with which J. Yoo began conveying each of the Properties following the start of the DOL investigation. In sum, it is genuinely contestable that J. Yoo possessed the requisite awareness of his insolvent financial state at the time of the conveyances, at least to the point to make summary judgment inappropriate.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiffs' Section 273 and 275 claims is denied.[9]

---

[9]     Defendants contend that, as a matter of law, the conveyance of the Home cannot be fraudulent because J. Yoo's interest was a tenancy by the entirety and therefore unavailable to satisfy the Judgment. (See Defs.' Mem. at 19-21.) This argument is unavailing. Under New York law, an interest in a property is permitted to be used to pay creditors, "even where the interest is that of a tenant by the entirety." Hall-Mark Elecs. Corp. v. MGS Mktg., Inc., No. 86 Civ. 4346, 1987 WL 13211, at *7 (E.D.N.Y. June 29, 1987) (collecting cases).

### b. The Section 276 Claim

Section 276 of the NY DCL provides that "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NY DCL § 276. Plaintiffs have the burden to prove actual intent "to hinder delay, or defraud" by clear and convincing evidence. In re Zerbo, 397 B.R. 642, 649 (Bankr. E.D.N.Y. 2008) (citing United States v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994)). "Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." In re Sharp Int'l Corp., 403 F.3d at 56 (quoting McCombs, 30 F.3d at 328) (alteration and internal quotation marks omitted).

Because direct proof of fraudulent intent is difficult to find, courts look for certain "badges" of fraud, including:

> (1) the lack or inadequacy of consideration; (2) the family, friendship, or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or

> pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

Ford Motor Credit Co. LLC v. Orton-Bruce, No. 14 Civ. 5382 (KMK), 2017 WL 1093906, at *9 (S.D.N.Y. Mar. 22, 2017) (quoting Sullivan v. Kodsi, 373 F. Supp. 2d 302, 306-07 (S.D.N.Y. 2005)). "[T]he presence of multiple indicia will increase the strength of the inference [of actual fraudulent intent]." MFS/Sun Life Trust-High Yield Servs., 910 F. Supp. at 935. "[T]he flip side of these badges of fraud is that their absence—or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control—would constitute evidence that there was no intent to defraud." Lippe, 249 F. Supp. 2d at 375.

Here, sufficient evidence has been put forward to make J. Yoo's intent unresolvable on summary judgment. As described above, whether there was fair consideration for the Properties is unclear; the conveyances were all between members of the Yoo family; J. Yoo continued to reside in the Home following its transfer; and the close proximity of the conveyances following the instigation of the DOL investigation and, with regard to the Home and Brooklyn Property, to one another, all raise questions

23

of fact as to J. Yoo's intent. Defendants' responses—that the conveyances were not in performed in secret, that control over the properties was taken away from J. Yoo upon transfer, and that J. Yoo was in fact solvent at the time of the conveyances—are all legitimate arguments to make before a trier of fact. They do not, however, at this time establish undisputed facts that would render Plaintiffs' contentions non-genuine. See Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711 (2d Cir. 1991) (noting that a person's intent "is purely a question of fact" and "[o]rdinarily . . . for summary judgment").

Accordingly, Defendants' motion for summary judgment with respect to Plaintiffs' Section 276 claim is denied.

## Defendants' *In Limine* Motion is Denied

No basis or authorities to exclude the discovery materials has been established by Defendants. Issues with regard to the relevancy of admitted evidence may be raised and shall be determined at the time of trial. Accordingly, Defendants' *in limine* motion is denied.

24

## Conclusion

For the foregoing reasons, Defendants' motions for summary judgment, declaratory judgment, and *in limine* exclusion of document are denied.

It is so ordered.

**New York, NY**
**September 29, 2017**

ROBERT W. SWEET
**U.S.D.J.**