```
USDC SD
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/17/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------
TAE H. KIM, et al.,

　　　　　Plaintiffs,

　　-against-

JI SUNG YOO, et al.,

　　　　　Defendants.
------------------------------------

15-cv-3110 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

　　This case arises out of a previous action wherein plaintiff employees sought damages under the Fair Labor Standard Act. See Kim v. Kum Gang Inc., No. 12-cv-6344 (S.D.N.Y.). On April 6, 2015, plaintiffs were awarded a collective judgment against defendant Ji Sung Yoo and his restaurant in the amount of $2,672,657.30.

　　On April 21, 2015, plaintiffs commenced this ancillary action to enforce the FLSA judgment, alleging that Ji Sung fraudulently conveyed three pieces of real property (the "Condo," the "Home," and the "Brooklyn Property") to his wife Sandra and his adult children Samuel and Carolyn.[1] Sandra, Samuel, and Carolyn moved to dismiss, arguing, inter alia, that because they were not defendants to the prior FLSA action, they could not be held personally liable for the judgment against Ji Sung. See Mem. Law Supp. Mot. Dismiss 9-10, ECF No. 37. The Hon. Robert W. Sweet denied that motion on

---

[1] Because the defendants share a surname, the Court refers to them by their given names.

1

January 19, 2016, holding, in pertinent part, that the action "d[id] not seek to impose liability on Yoo's family members," but only "to reverse the allegedly fraudulent conveyances of Yoo's property to them." Opinion 11-13, ECF No. 57. Defendants raised a similar argument in their motion for summary judgment, see Mem. Law Supp. Mot. Summ. J. 12-13, ECF No. 85, and the Court again rejected it, see Opinion 11 n.3, ECF No. 104.

Following a bench trial, on April 18, 2018, Judge Sweet found that Ji Sung's interests in the three properties "were fraudulently conveyed and must be set aside." Opinion and Order 58, ECF No. 131. Judgment was entered on May 17, 2018. On May 26, 2018, defendants filed a notice of appeal, appealing the Court's April 18 Opinion and Order, as well as its Orders denying defendants' motions to dismiss and for summary judgment. Amended Notice of Appeal, ECF No. 137. That appeal was argued on May 10, 2019, but has not yet been decided. See Kim v. Yoo, Case No. 18-1447, ECF No. 99 (2d Cir.).

On July 9, plaintiffs moved to enforce the judgment pursuant to Fed. R. Civ. P. 70 because defendants had taken no steps to restore the properties to their pre-conveyance ownership. See Motion to Enforce Judgment, ECF No. 145. Defendants argued, in opposition, that the Court's ruling that the conveyances "must be set aside" did not require them to do anything. See Larsen Decl. in Opp., ECF No. 150. Judge Sweet granted the motion to enforce on

2

January 30, 2019, ordering that defendants "shall restore" the Condo and Brooklyn Property to Ji Sung Yoo's prior ownership "[b]y March 1, 2019" and the Home "[b]y March 1, 2018 [sic]." Order dated Jan. 29, 2019, at 2. Judge Sweet also granted the plaintiffs attorneys' fees totaling $264,627 and $25,938.07 in costs. Id. at 1-2. Judgment was entered on that Order on February 8, see ECF No. 159, and defendants filed a notice of appeal on February 28, see ECF No. 165.

Rather than complying, the defendants, on February 27, 2019, moved for reconsideration of the Court's judgment and award of fees. See Motion for Reconsideration, ECF No. 163. Two weeks later, plaintiffs moved for contempt as a sanction for defendants' failure to comply. See Motion for Contempt, ECF No. 167. Upon Judge Sweet's tragic and untimely passing, this case was reassigned to the undersigned.

Defendants argue that this Court cannot exercise ancillary jurisdiction over the claims against Sandra, Samuel, and Carolyn because to do so would improperly hold them liable for Ji Sung's debt. Mot. For Reconsideration Exh. 13, at 7 ("Def. Mem."), ECF No. 163-13. But the Court lacks jurisdiction to consider this argument, because defendants have appealed this issue to the Second Circuit Court of Appeals. "[T]he filing of a notice of appeal divests the district court of jurisdiction over matters related to the appeal." Acevedo-Garcia v. Vera-Monroig, 368 F.3d 49, 58 (1st

3

Cir. 2004). Judge Sweet rejected these arguments when he denied defendants' motion to dismiss, and defendants appealed that ruling. In fact, defendants raised this exact argument in their appellate brief. See Appellants' Brief 30-33, Case No. 18-1447 (2d Cir.), ECF No. 65. Thus, jurisdiction resides in the Second Circuit, not this Court.[2]

Defendants additionally complain that the fee award is excessive. See Def. Mem. 13. Again, because defendants have appealed that Order; see ECF No. 165, this Court lacks jurisdiction to consider the argument.[3] Accordingly, defendants' motion to reconsider the judgment and fee award is denied.

Plaintiffs move to hold defendants in contempt because they "have not taken a single step to comply with this Court's January 29 order." Mem. Law Supp. Mot. Contempt 1 ("Pl. Mem."), ECF No. 168. The Court has jurisdiction over this motion because the filing

---

[2] Were the Court permitted to reach the merits, it would deny the motion for the same reasons ably articulated by Judge Sweet. Ordering that the fraudulent conveyances be set aside does not hold Ji Sung's family members liable for the FLSA judgment, even if (as defendants contend) the conveyances would in practice require mortgage payments to be made. See Epperson v. Entertainment Express, Inc., 242 F.3d 100, 106 (2d Cir. 2001) ("Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party.").

[3] Again, if the Court could reach the merits, it would deny defendants' motion in any event. Defendants concede that all the factors they now contend render the fee award excessive were "previously brought to the Court's attention when this issue was briefed." Def. Mem. 13. As no new arguments are raised, there is no basis to reconsider the fee award.

4

of a notice of appeal "has no bearing on a court's power to hold a party in contempt for violating a court order related to execution on a judgment." Acevedo-Garcia, 368 F.3d at 58. "If a party violates an unstayed execution order, the fact that the underlying judgment is on appeal does not deprive the district court of its normal contempt powers." Id.

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Paramedics Electromedicinia Comercial, Ltda v. GE Med. Sys. Information Tech., Inc., 369 F.3d 645, 655 (2d Cir 2004) (internal quotation marks omitted) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)). Here, there is no dispute that defendants have not complied with the Court's January 29 Order, i.e. they have not restored the properties at issue. Defendants argue, however, that the Order was not clear and that they have made good faith efforts to comply.

As to clarity, the January 29 Order clearly and succinctly requires the properties to be restored to their pre-conveyance status by a date certain. Defendants argue that it is ambiguous in two respects. First, as to the Home, the Order required compliance by "March 1, 2018." Mem. Law Opp. Mot. Contempt 2 ("Def. Opp."),

5

ECF No. 176. The Court is not persuaded. As the Order issued on January 29, 2019, nearly 11 months after March 1, 2018, it is abundantly clear that the 2018 date was a typo. The other two listed dates for compliance were March 1, 2019, and any reasonable person would understand that all three dates were intended to be identical. Defendants cannot reasonably claim to have been confused by this obvious scrivener's error.

Defendants also argue that the Order is ambiguous as to the Brooklyn Property because it states that "Defendant" shall restore the property, even though two defendants (Samuel and Sandra) jointly own it. Def. Opp. 3. This is no more convincing. Given the context and history of this case, neither Sandra nor Samuel could possibly have been unsure whether they were required to restore the Brooklyn Property simply because the Order used the singular.

The Court therefore concludes that the January 29 Order was clear and unambiguous, and the proof is clear and convincing that defendants have not complied. The only remaining question is whether they made diligent efforts to comply. Defendants claim, by affidavit, that they have made inquiries of the banks holding the mortgage notes for each of the subject properties; that those banks have indicated that they will not consent to transfer of the properties back to Ji Sung unless the balance of the mortgages are paid off; and that defendants are unable to pay those mortgages. See Carolyn Yoo Decl. ¶¶ 9-11, ECF No. 171; Ji Sung Yoo Decl. ¶ 3,

6

ECF No. 172; Samuel Yoo Decl. ¶¶ 5, 10; Sandra Yoo Decl. ¶¶ 6, 9, 11. Thus, defendants argue that it is impossible for them to comply.

"[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). Although the Court's Order does not by its terms impose monetary sanctions, the Court would not hold defendants in contempt if it were satisfied that they were unable to transfer the properties as a result of their inability to pay off the mortgages. However, "the alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably." Id. "Conclusory statements are inadequate to carry this burden." Id. "[T]here is no requirement that the ability to pay be clearly established; what is required is that the inability to pay be clearly established by the alleged contemnor." Id.

Here, defendants offer no more than conclusory assertions that they are unable to pay off the mortgages. Defendants have not even represented what funds are available to them, nor what assets they own, much less offered any documentary evidence. See Huber, 51 F.3d at 11 (holding that district court properly considered alleged contemnor's failure to produce documentary evidence in assessing credibility of claimed inability to pay). Moreover,

7

plaintiffs have offered evidence that the defendants have recently owned and sold properties for substantial sums exceeding the value of the mortgages at issue. See Kimerling Decl. Exhs. 2-4, ECF Nos. 182-1, 182-2, 182-3. Plaintiffs also point out that as recently as February 4, 2019, Ji Sung represented, in a declaration filed in his restaurant's bankruptcy case, that he could raise around $2,000,000 by selling his ownership shares. Kimerling Decl. EXh. 11 ¶ 6, ECF No. 182-10. Under these circumstances, defendants' bare assertions of incapacity are not sufficient to meet their burden.

Defendants' affidavits are also suspect for other reasons. First, the affidavits largely consist, not of factual assertions, but of legal arguments copied, in some cases virtually word for word, from their legal papers in opposition. Second, Ji Sung and Sandra both testified at the bench trial, and Judge Sweet found their testimony to be "self-serving and unreliable." Opinion and Order dated April 17, 2018, at 3. Sandra's testimony, in particular, "seismically shifted over the course of the litigation and appeared crafted after her deposition to support Defendants' trial posture." Id. at 4. The Court places great weight on Judge Sweet's opportunity to view firsthand defendants' testimony and demeanor and therefore views their present affidavits with skepticism, particularly in the absence of any corroborating evidence.

Third, defendants' dilatory behavior has been little less than shocking. Judge Sweet ruled that the conveyances were fraudulent over a year ago. Defendants apparently made no efforts whatsoever to comply with that ruling, instead taking the unsupportable position that they were not required to do anything. When Judge Sweet set a deadline of March 1, 2019, defendants still failed to comply, instead choosing to file a frivolous motion for reconsideration just days before March 1. Notably, at no point did defendants ever claim an inability to comply with Judge Sweet's Order until plaintiffs moved for contempt. Taken as a whole, this pattern of conduct suggests a single-minded attempt to run out the clock, delaying the ultimate resolution of this case by the interpolation of baseless motions and bad faith arguments.

Nonetheless, because defendants have "put[] in issue [their] misconduct," they are "entitled to have oral evidence taken." Local Civil Rule 83.6(b). The parties are therefore directed to appear for a contempt hearing on June 20, 2019 at 4:00pm. The evidence taken at the hearing shall be limited to defendants' financial status and ability or inability to pay off the mortgages. Each of the defendants must appear personally, whether or not they intend to testify, in the event the Court finds it necessary to question them.

Additionally, defendants are directed to show cause why their motion for reconsideration filed February 27, 2019 does not violate

9

Federal Rule of Civil Procedure 11(b). Defendants may address this subject at the June 20 contempt hearing.

Plaintiffs also seek attorneys' fees in connection with their contempt motion. The Court will take up the issue of a fee award once it has made a final determination as to contempt.

Finally, in opposing plaintiffs' motion for sanctions, defendants purport to cross-move for a stay of the Court's January 29 Order pending appeal. Def. Opp. 7. This purported motion utterly fails to comply with the Local Civil Rules and therefore has not been considered. Even were it properly before the Court, the motion is hopelessly untimely, and must be denied.

The Clerk of the Court is directed to close docket entry 163.

SO ORDERED.

Dated:   New York, NY

May 16, 2019

JED S. RAKOFF, U.S.D.J.